# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMIE TERRY PATTERSON,     )
                           )
          Plaintiff,     )
                           )
          v.               )      1:22cv515
                           )
STANLY COUNTY DETENTION CENTER,  )
et al.,                     )
                           )
          Defendants.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Motions for Summary Judgment filed by Defendants Kiera Morrison and Samantha Reyes (collectively, the "Summary Judgment Motions") (Docket Entries 45, 48). (See Docket Entry dated Feb. 6, 2024.) The Court should decline to enter summary judgment for Defendants Morrison and Reyes on the merits of Plaintiff's claim, but should grant them summary judgment based on their qualified immunity defense.

## INTRODUCTION

Plaintiff commenced this action by filing a pro se Complaint against various Defendants under 42 U.S.C. § 1983 based on events which occurred between October 15 and 19, 2020, during Plaintiff's pretrial detention at the Stanly County Detention Center. (See Docket Entry 2.) The Court (per now-Chief United States District Judge Catherine C. Eagles) ordered this action "dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim on which

relief may be granted as to all [D]efendants with the exception of [D]efendant Samantha Kay." (Docket Entry 6 at 2; <u>see also</u> <u>id.</u> ("The deliberate indifference claim against [D]efendant Kay may proceed.").)[1] Thereafter, the undersigned Magistrate Judge "direct[ed] the Clerk to send Plaintiff a summons form for Defendant Samantha Kay[] and [] requir[ed] Plaintiff to properly complete that summons form . . . and to return it to the Clerk . . . ." (Text Order dated Sept. 14, 2022; <u>see also</u> <u>id.</u> ("If Plaintiff timely returns a properly completed summons form, the Clerk shall issue the summons and shall forward it to the United States Marshals Service, which shall make service of process.").)

Plaintiff returned the summons form and the Clerk issued a summons for Defendant Samantha Kay addressed to the Stanly County Sheriff's Office. (<u>See</u> Docket Entry 10.) The United States Marshals Service ("USMS") mailed the summons (as addressed) (<u>see</u> Docket Entry 15); however, the United States Postal Service returned that mailing as undeliverable (<u>see</u> Docket Entry 17). The undersigned Magistrate Judge subsequently "direct[ed] the Clerk to re-issue a[n amended] summons as to Defendant Samantha Kay, to list thereon her title as 'County Nurse'" (Text Order dated Nov. 9, 2022) and to "request that, if the USMS elects to utilize certified mail again, the USMS first attempt to make contact with someone at

_____

1 Pin cites to Docket Entries refer to the page numbers in the footer appended to documents upon their docketing in the CM/ECF system (not to any original pagination).

2

the Stanly County Sheriff's Office in an effort to facilitate delivery" (id.). The Clerk then re-issued an amended summons as directed (see Docket Entry 19), but the USMS returned the amended summons unexecuted after "contact[ing the] Stanly County Sheriff's Office and [receiving] advi[ce that] Samantha Kay is not a nurse [at the] Stanly County Sheriff's Office" (Docket Entry 20 at 1).

As a result, the undersigned Magistrate Judge "direct[ed] the Clerk to attempt to locate counsel willing to represent Plaintiff without compensation, pursuant to the Court's Pro Bono Representation Program, for the limited purpose of properly identifying and obtaining service of process on Defendant 'Samantha Kay, County Nurse' . . . ." (Text Order dated Nov. 30, 2022; see also id. ("Any such counsel may move to withdraw after obtaining service of process or exhausting all reasonable avenues for doing so.").) In short order, Attorney Daniel F. E. Smith made a limited appearance for Plaintiff for such limited purpose. (See Docket Entry 21.) Attorney Smith later obtained leave of court for Plaintiff "to [a]mend [the] Complaint to [n]ame 'Nurse Kiera Morrison' and 'Nurse Samantha Reyes' as a [c]orrection to 'Nurse Samantha Kay'" (Docket Entry 24 at 1). (See id.)

According to that amendment, "Defendant[s] Samantha Reyes and Kiera Morrison . . . failed to maintain the safety and care of [Plaintiff] by knowing about [his] seizure history, medication, and medical condition but not acting medically upon [his] needs."

3

(Docket Entry 25 ("Amended Complaint") at 4; see also id.
(identifying Defendants Reyes and Morrison as "the [C]ounty Jail
Nurses at the time," who bore "responsib[ility] for all [i]nmates
[sic] medication and medical needs," but "did not issue
[Plaintiff's] medication to [him], knowing about [his] seizures and
med[ication]s during intake on 10/15/20," which "resulted in [his]
seizure and hospitalization on 10/19/20").)  The Amended Complaint
elaborates (in pertinent part) as follows:

> On or about October 3, 2020, [Plaintiff] was arrested and
> detained at the Stanly County [D]etention [C]enter.  At
> approximately 3:45:59 a.m. the jail (Officer J.R. Heidel)
> logged [Plaintiff's] medical screening as complete.  That
> medical screening, which is signed by [Defendant]
> Morrison, notes at question 42 that [Plaintiff] take[s]
> "medication for siezures [sic] and mood stabilizers."
>
> On 10/15/2020[, Plaintiff again] was arrested and sent to
> the Stanly County Jail . . . .  During intake[, he] was
> ask [sic] multiple general health questions, which were
> all logged into the system.  The Stanly County Detention
> Center staff and Nurse[s] Kiera Morrison and Samantha
> Reyes were notified of [Plaintiff's] seizure history and
> seizure medication Depocote [sic] that [he] ha[s] to take
> twice daily for [his] seizures.  The medical screening
> dated October 15, 2020 and signed by [Defendant] Morrison
> does not, however, indicate that [Plaintiff] take[s] any
> medication. . . .  [Plaintiff] was never given [his]
> medication.  On 10/19/20 around approx[imately] 6:00 pm[,
> Plaintiff] was found . . . on the floor beside [his] bunk
> unconscious. . . .  [Plaintiff] was rushed to [a]
> hospital [emergency room] where [he] was placed on a
> ventalater [sic] and had to stay in [the] Intensive Care
> Unit for 3 days.  [Plaintiff] had a seizure at Stanly
> County Detention Center from not recieving [sic] [his]
> seizure medication. . . .  [Defendants] Reyes and []
> Morrison failed to provide [Plaintiff] with [his] medical
> needs as they were in charge of inmates [sic] medical
> conditions at the jail.

(Id. at 7-8.)

4

Directly on the heels of the filing of the Amended Complaint, Attorney Smith secured waivers of service from Defendants Morrison and Reyes (see Docket Entries 26, 27), who (in turn) timely answered (see Docket Entries 32, 33).  In their answers, Defendants Reyes and Morrison, inter alia, each "expressly denied that [she] was ever deliberately indifferent to any medical condition suffered by Plaintiff" (Docket Entry 32 at 2; Docket Entry 33 at 2) and asserted "entitle[ment] to qualified immunity from Plaintiff's suit" (Docket Entry 32 at 4; Docket Entry 33 at 4).  At that juncture, with the objectives of his limited appearance fulfilled, Attorney Smith moved to withdraw.  (See Docket Entry 36.)  The Court (per the undersigned Magistrate Judge) "grant[ed that m]otion . . . and terminat[ed] Attorney [] Smith as limited-purpose counsel for Plaintiff with the thanks of the Court." (First Text Order dated May 17, 2023.)  That same day, the Court (per the undersigned Magistrate Judge) "adopt[ed a] Scheduling Order" (Second Text Order dated May 17, 2023), authorizing six months of discovery (see id.).

After discovery closed, Defendants Morrison and Reyes filed the Summary Judgment Motions (Docket Entries 45, 48) and supporting briefs (Docket Entries 46, 49), along with an "Affidavit of Kiera Morrison" (Docket Entry 47 at 1 (bold and all-caps font omitted)) and an "Affidavit of Samantha Reyes" (Docket Entry 50 at 1 (bold and all-caps font omitted)), both accompanied by matching sets of jail and hospital records (Docket Entries 47-1, 50-1).  The Clerk

5

then sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition to the [Summary Judgment M]otions" (Docket Entry 51 at 1), as well as "affidavits setting out [his] version of any relevant disputed material facts or . . . other responsive material" (id.; see also id. ("A response to a motion for summary judgment must be filed within 30 days from the date of service on you.")).  That letter explicitly cautioned Plaintiff that a "failure to . . . file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the [Summary Judgment Motions'] contentions are undisputed and/or that [he] no longer wish[es] to pursue the matter." (Id.)  Plaintiff timely opposed the Summary Judgment Motions (Docket Entry 52 (the "Response")), Defendants Morrison and Reyes jointly replied (Docket Entry 53 (the "Reply")), and Plaintiff filed an unauthorized sur-reply (Docket Entry 54; see also Docket Entry 55 at 2 ("request[ing] that the Court . . . disregard [his s]ur-[r]eply")).

DISCUSSION

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When considering summary judgment, the Court "tak[es]

6

the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Put another way, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal brackets and quotation marks omitted). If, applying that standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

    As detailed in the Introduction, (A) now-Chief Judge Eagles permitted this case to proceed on Plaintiff's claim for deliberate indifference, as originally asserted against Defendant Kay (see Docket Entry 6 at 2), and (B) the undersigned Magistrate Judge authorized Plaintiff to correct that claim to name Defendants Morrison and Reyes as the liable persons (see Docket Entry 24 at 1; Docket Entry 25 at 4, 7-8). Plaintiff's deliberate indifference claim against Defendants Morrison and Reyes rests on the following foundation: "[W]hen the State takes a person into its custody and

holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his . . . medical care . . .[,] it transgresses the substantive limits on state action set by the Eighth Amendment [in the case of convicted prisoners] and the Due Process Clause [of the Fourteenth Amendment in the case of pretrial detainees]." Id. at 200; see also Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) ("[S]ince [the plaintiff] was a pretrial detainee and not a convicted prisoner, the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." (internal quotation marks omitted)); Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) ("In cases where the government is accused of failing to attend to a detainee's serious medical needs, . . . conduct that amounts to deliberate indifference . . . can support a Fourteenth Amendment claim." (internal quotation marks omitted)).

Fourteenth Amendment Deliberate Indifference – Merits

The Summary Judgment Motions contend "that the undisputed evidence demonstrates a lack of any genuine issue of material fact and entitles [both] Defendant[s Morrison and Reyes] to judgment as

8

a matter of law . . . ." (Docket Entry 45 at 1; <u>accord</u> Docket Entry 48 at 1.) In developing that contention, the argument portions of the supporting briefs filed by Defendants Morrison and Reyes mistakenly frame Plaintiff's deliberate indifference claim as arising under the Eighth Amendment, rather than the Fourteenth Amendment. (<u>See</u> Docket Entry 46 at 4-5; Docket Entry 49 at 4-5.) Until very recently, that mistake would have lacked any practical significance, as – after "the Supreme Court finally adopted a test for Eighth Amendment deliberate indifference claims in *Farmer v. Brennan*[,] 511 U.S. 825 (1994)," <u>Short v. Hartman</u>, 87 F.4th 593, 606-07 (4th Cir. 2023) (parallel citations omitted); <u>see also</u> <u>id.</u> at 607 ("That test is subjective[.]") – "a consensus emerged among the courts of appeal[s] that *Farmer*'s subjective Eighth Amendment standard applied to Fourteenth Amendment claims," <u>id.</u> at 607, and "[the United States Court of Appeals for the Fourth Circuit], too, extended *Farmer* to Fourteenth Amendment claims," <u>id.</u>; <u>see also</u> <u>Brown v. Harris</u>, 240 F.3d 383, 388 n.6 (4th Cir. 2001) (reaffirming "that the same 'deliberate indifference' standard applies to both inmates and pretrial detainees"). However, the Fourth Circuit now has held that "the heightened, subjective Eighth Amendment deliberate indifference standard does not extend to Fourteenth Amendment cases," <u>Short</u>, 87 F.4th at 609. <u>See</u> <u>id.</u> at 609-11.

9

To replace the previous standard, the <u>Short</u> Court formulated this four-element test for a Fourteenth Amendment "claim for deliberate indifference to a medical need," <u>id.</u> at 611:

> (1) the[ plaintiff] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant <u>knew or should have known</u> (a) that the [plaintiff] had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the [plaintiff] was harmed.

<u>Id.</u> (emphasis added). The <u>Short</u> Court thereafter elaborated:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the [plaintiff's] serious medical condition and consciously disregarded the risk that [the defendant's] action or failure to act would result in harm. . . . Now, it is sufficient that the plaintiff show that the defendant's action or inaction was . . . <u>objectively unreasonable</u>: that is, the plaintiff must show that the defendant <u>should have known</u> of that condition and that risk, and acted accordingly. . . .
>
> To be clear, it is still <u>not enough</u> for the plaintiff to allege that the defendant <u>negligently</u> or accidentally failed to do right by the detainee. <u>Negligence was not enough before and it is not enough now</u>.

<u>Id.</u> at 611-12 (emphasis added) (internal citations and quotation marks omitted).[2]

---

2 The distinction <u>Short</u> draws between its new standard for deliberate indifference under the Fourteenth Amendment and negligence may prove "confusing to judges and lawyers, let alone jurors," <u>Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church</u>, 733 F.3d 722, 733 (7th Cir. 2013), even to the point of "exact[ing] gifts that [hu]mankind does not possess," <u>International Harvester Co. v. Kentucky</u>, 234 U.S. 216, 224 (1914).

(continued...)

In advancing the argument that Defendants Morrison and Reyes "w[ere] not deliberately indifferent to any serious medical condition suffered by Plaintiff" (Docket Entry 46 at 4 (bold and

---

2(...continued)
For instance, if the facts show "negligent conduct, which is, by definition, objectively unreasonable conduct," In re NNN 400 Capitol 16 LLC, 632 B.R. 243, 257 (D. Del. 2021), aff'd, Nos. 21-3013, 22-1639, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) (unpublished) (emphasis added), a judge/juror could feel compelled to find deliberate indifference, given that (under Short's test) "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable," Short, 87 F.4th at 611 (emphasis added) (internal quotation marks omitted); see also Worsham v. Accounts Receivable Mgmt., 497 F. App'x 274, 277 (4th Cir. 2012) (citing with approval Restatement (Second) of Torts § 283 cmt.3 (1965), for proposition "that the 'reasonable man' standard in tort-law negligence is 'an objective and external one'"); United States v. Anderson, No. 4:07CR23, 2007 WL 4732033, at *12 (N.D. Ohio June 21, 2007) (unpublished) ("[T]he fact that an officer's mistake was negligent makes that mistake, by definition, unreasonable."). "For another thing, [the] third [element's] 'should-have-known' language suggests a classic negligence formulation." Estate of Romain v. City of Grosse Pointe Farms, 935 F.3d 485, 494 (6th Cir. 2019) (Murphy, J., concurring); see also United States v. Zhong, 95 F.4th 1296, 1303 (10th Cir. 2024) ("[T]he 'should have known' language is equivalent to a negligence standard . . . ." (some internal quotation marks omitted)); United States v. Zats, 298 F.3d 182, 189 (3d Cir. 2002) ("[T]he language 'knew or should have known' means that negligence is a sufficient level of culpability . . . ." (emphasis omitted)); Ricchio v. Bijal, Inc., 424 F. Supp. 3d 182, 193 (D. Mass. 2019) ("The phrase 'knew or should have known' echoes common language used in describing an objective standard of negligence." (stray comma omitted)); Garcia v. Spotts, No. 1:17CV26, 2018 WL 6626557, at *4 (S.D. Miss. Sept. 24, 2018) (unpublished) ("The language [the plaintiff] uses (knew or should have known) sounds in negligence, but negligence claims are not cognizable under § 1983." (internal quotation marks omitted)), recommendation adopted, 2018 WL 6625076 (S.D. Miss. Dec. 18, 2018) (unpublished). "Although this [legal landscape] is somewhat disconcerting, down here at the grass roots . . ., we must do the best we can with what we have." ACLU of Ky. v. Wilkinson, 701 F. Supp. 1296, 1309 n.36 (E.D. Ky. 1988), aff'd, 895 F.2d 1098 (6th Cir. 1990).

11

all-caps font omitted); _accord_ Docket Entry 49 at 4 (bold and all-caps font omitted)), their supporting briefs, filed on December 20, 2023 (_see_ Docket Entry 46 at 10; Docket Entry 49 at 10), do _not_ attempt to apply the facts of this case against the above-quoted, Fourteenth Amendment deliberate indifference elements, announced by the Fourth Circuit on December 8, 2023, _see_ _Short_, 87 F.4th at 594. (_See_ Docket Entry 46 at 4-7; Docket Entry 49 at 4-6.) Instead, after highlighting pre-_Short_, Eighth-Amendment-focused case law (_see_ Docket Entry 46 at 4-6; Docket Entry 49 at 4-6), Defendants Morrison and Reyes made these three, basic assertions:

1) "[Defendant] Morrison did not render direct treatment to Plaintiff during his incarceration from October 15, 2020 through October 19, 2020" (Docket Entry 46 at 6);

2) "following his booking on October 15, 2020, Plaintiff repeatedly refused to be seen by medical staff for evaluation" (_id._ (citing Docket Entry 47 at 3-4); _accord_ _id._ at 6-7 (citing Docket Entry 47 at 3-4); Docket Entry 49 at 6 (citing Docket Entry 50 at 3); _see also_ Docket Entry 49 at 6 (indicating, based on same cited material, that Defendant Reyes twice unsuccessfully "attempted to conduct a medical evaluation of Plaintiff")); and

3) "[m]edications cannot be distributed to inmates without an initial medical evaluation following their booking into the Jail and an order by [the supervising physician assistant] prescribing

12

the medication" (Docket Entry 46 at 6 (citing Docket Entry 47 at 2); accord Docket Entry 49 at 6 (citing Docket Entry 50 at 2)).

After making those assertions, Defendants Morrison and Reyes declared that, "[a]ccordingly, neither [one of them] nor any other medical provider at the Jail was deliberately indifferent to Plaintiff's medical needs." (Docket Entry 46 at 7; accord Docket Entry 49 at 6.)  To the extent the Court may elect to undertake its own mapping of the above-quoted assertions, which Defendants Morrison and Reyes offered to support their declaration that their conduct did not amount to deliberate indifference, onto the Short elements,[3] those assertions (on their face) do not contest the first element, i.e., that Plaintiff "had a medical condition or injury that posed a substantial risk of serious harm," Short, 87 F.4th at 611.  And, elsewhere, the supporting briefs concede (A) that, "[a]t th[e] time [of his initial booking on October 3, 2020,] Plaintiff reported taking medication for seizures" (Docket Entry 46 at 2-3; accord Docket Entry 49 at 2), as well as (B) that, "[o]n October 19, 2020, nursing staff was called to Plaintiff's pod for a report that Plaintiff was having a seizure" (Docket Entry 46 at 3; see also Docket Entry 49 at 3 (identifying Defendant Reyes as nurse "called to Plaintiff's pod")), where said staff "found

_____

    3 "It is not the Court's job to undertake the analysis and legal research needed to support a perfunctory argument, nor should a party expect [the C]ourt to do the work that [the party] elected not to do." Hill v. Carvana, LLC, No. 1:22CV37, 2022 WL 1625020, at *5 (M.D.N.C. May 23, 2022) (unpublished) (Eagles, J.) (internal citation and quotation marks omitted).

13

Plaintiff . . . limp" (Docket Entry 46 at 3; accord Docket Entry 49 at 3), ultimately resulting in his "transport[ation] to [a hospital]" (Docket Entry 46 at 3; accord Docket Entry 49 at 3), where he "was treated for seizure activity" (Docket Entry 46 at 4; accord Docket Entry 49 at 3). Furthermore, courts have recognized that "seizure disorders . . . can constitute sufficiently serious medical conditions so as to implicate the 14th Amendment." Jumpp v. Simonow, No. 3:20CV138, 2020 WL 4059850, at *9 (D. Conn. July 20, 2020) (unpublished); accord Williams v. Lewis, No. 4:16CV258, 2018 WL 3242019, at *3 (E.D. Mo. July 3, 2018) (unpublished), appeal dismissed, No. 18-2667, 2018 WL 6264568 (8th Cir. Oct. 10, 2018) (unpublished); Obomanu v. Warren, Nos. 17-11435, 17-13749, 2018 WL 3020525, at *3 (E.D. Mich. June 18, 2018) (unpublished).

Conversely, the assertions made by Defendants Morrison and Reyes to deny deliberate indifference could bear on Short's other three elements. For example, if the record established that "[Defendant] Morrison did not render direct treatment to Plaintiff during his incarceration from October 15, 2020 through October 19, 2020" (Docket Entry 46 at 6), that fact conceivably could support the conclusion that she neither "knew [n]or should have known (a) that [he] had [a seizure] condition and (b) that [a failure to provide seizure medication] posed an unjustifiably high risk of harm," Short, 87 F.4th at 611. Likewise, if the absence of direct treatment of Plaintiff by Defendant Morrison during that time-frame

14

established her lack of knowledge or reason to know of his seizure condition (and the concomitant risk posed by the absence of medication), Plaintiff likely could not show that Defendant Morrison "intentionally, knowingly, or recklessly . . . failed to act to appropriately address the risk that [Plaintiff's seizure] condition posed," id. Nevertheless, at least two aspects of the record here preclude summary judgment in Defendant Morrison's favor based on the assertion that she "did not render direct treatment to Plaintiff during his incarceration from October 15, 2020 through October 19, 2020" (Docket Entry 46 at 6).

First and foremost, contrary to the mandate that "[e]ach statement of fact [in a brief] should be supported by reference to a part of the official record," M.D.N.C. LR 7.2(a)(2), Defendant Morrison's supporting brief does not cite any record basis for her disavowal of directly treating Plaintiff during that time period (see Docket Entry 46 at 6; see also id. at 1-4 (omitting that assertion from facts section); Docket Entry 47 at 4 (acknowledging Defendant Morrison's unspecified "interactions with [Plaintiff]")). That disavowal therefore amounts to nothing more than a statement in a summary judgment brief and such "[s]tatements . . . are not evidence." Hill v. Carvana, LLC, No. 1:22CV37, 2022 WL 1625020, at *3 (M.D.N.C. May 23, 2022) (unpublished) (Eagles, J.); see also Maisha v. University of N.C., No. 1:12CV371, 2015 WL 277747, at *1 (M.D.N.C. Jan. 22, 2015) (unpublished) (Eagles, J.) (emphasizing

15

that, at summary judgment, "[t]he Court [does] not consider[ ] 'facts' set forth in the briefs that are not supported by citations to admissible evidence"). Second, jail records Defendant Morrison submitted with her summary judgment filings substantiate the Amended Complaint's allegation that, "[o]n or about October 3, 2020, [Plaintiff] was arrested and detained at the Stanly County [D]etention [C]enter" (Docket Entry 25 at 7), whereupon an officer documented "that [Plaintiff] take[s] 'medication for siezures [sic]'" (id.). (See Docket Entry 47-1 at 13-14; see also id. at 13 (reflecting illegible signature dated "10/3/20" on line labeled "Reviewed By (Nurse):" on Plaintiff's "Jail Medical Screen History Report" (bold font omitted)).)

In sum, Defendant Morrison has failed to produce any competent evidence establishing that she "did not render direct treatment to Plaintiff during his incarceration from October 15, 2020 through October 19, 2020" (Docket Entry 46 at 6), and – even if the record did establish that fact – it would not preclude findings (1) that Defendant Morrison reviewed or should have reviewed Plaintiff's medical screening document created on October 3, 2020, (2) that, as of October 15, 2020, she thus "knew or should have known (a) that [he] had [a seizure] condition and (b) that [failure to provide seizure medication] posed an unjustifiably high risk of harm," Short, 87 F.4th at 611, (3) that she "recklessly . . . failed to

16

act to appropriately address the risk that [his seizure] condition posed," id., and (4) that, "as a result, [he] was harmed," id.

That analysis leaves the assertions by Defendants Morrison and Reyes (A) that, "following his booking on October 15, 2020, Plaintiff repeatedly refused to be seen by medical staff for evaluation" (Docket Entry 46 at 6 (citing Docket Entry 47 at 3-4); accord Docket Entry 49 at 6 (citing Docket Entry 50 at 3)), and (B) that "[m]edications cannot be distributed to inmates without an initial medical evaluation following their booking into the Jail and an order by [the supervising physician's assistant] prescribing the medication" (Docket Entry 46 at 6 (citing Docket Entry 47 at 2); accord Docket Entry 49 at 6 (citing Docket Entry 50 at 2)). As the foregoing citations indicate, those assertions rely on the "Affidavit of Kiera Morrison" (Docket Entry 47 at 1 (bold and all-caps font omitted)) and the "Affidavit of Samantha Reyes" (Docket Entry 50 at 1 (bold and all-caps font omitted)); however, despite their titles, those documents "do not qualify as affidavits and [should] not [be] considered by the Court when ruling on [the S]ummary [J]udgment [Motions]," Williams v. Gilbert, No. 7:22CV668, 2024 WL 1261211, at *4 (W.D. Va. Mar. 25, 2024) (unpublished) (internal quotation marks omitted).

In that regard, "an affidavit, by definition, is a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." Elder-Keep v.

17

<u>Aksamit</u>, 460 F.3d 979, 984 (8th Cir. 2006) (emphasis in original) (internal quotation marks omitted); <u>accord, e.g.</u>, <u>United States v. Watkins</u>, No. 4:08CR123, 2010 WL 11606742, at *2 (E.D. Va. Dec. 7, 2010) (unpublished). "Alternatively, federal law provides that[,] if [a] declaration is not sworn before an official authorized to administer an oath, it may nevertheless be admissible to support a summary judgment motion if made under penalty of perjury." <u>LeMay v. United States</u>, Nos. 1:02CR105-6, 1:06CV336, 2010 WL 3522333, at *1 (W.D.N.C. Sept. 7, 2010) (unpublished) (citing 28 U.S.C. § 1746(2)); <u>accord, e.g.</u>, <u>Nissho–Iwai Am. Corp. v. Kline</u>, 845 F.2d 1300, 1306 (5th Cir. 1988). The documents at issue (1) preface the statements therein as made after "being first duly sworn" (but with no mention of the nature of any oath or the identity/authority of any oath-giver) (Docket Entry 47 at 1; Docket Entry 50 at 1), (2) bear the signature of either Defendant Morrison or Defendant Reyes (<u>see</u> Docket Entry 47 at 5; Docket Entry 50 at 5), and (3) conclude with a notary's signed and sealed "certif[ication] that [they] personally appeared before [the notary] th[at] day, acknowledging to [the notary] that [they] signed the foregoing document[s]" (Docket Entry 47 at 5; Docket Entry 50 at 5).

As the plain language just quoted from these documents manifests, such a "notary's certificate simply means that the [documents'] signature[s are] authentic." <u>Network Computing Servs. Corp. v. Cisco Sys., Inc.</u>, 152 F. App'x 317, 321 (4th Cir. 2005).

18

Hence, "[i]t is not a substitute for language indicating that [Defendants Morrison and Reyes] understood [they] risked prosecution for perjury if [they] gave false testimony." Id. Under these circumstances:

> Even though a notary public's stamp appears on [each] of the[se documents], n[either] of the[m is] admissible for purposes of summary judgment because [Defendants Morrison and Reyes] did not swear to their contents under penalty of perjury and there is no indication that the notary administered an oath to the[m]. Accordingly, the Court [should] not consider [either] of these d[ocuments] for purposes of summary judgment.

Latney v. Parker, No. 2:17CV24, 2017 WL 7794573, at *3 (E.D. Va. July 20, 2017) (unpublished), aff'd, 707 F. App'x 202 (4th Cir. 2017). Additionally, to the extent the Court chose to look beyond the statements made by Defendants Morrison and Reyes in these documents to the jail records they cited therein, material factual disputes still remain as to the merits of Plaintiff's claim for deliberate indifference in violation of the Fourteenth Amendment under the elements adopted for such a claim in Short.

To begin, although Defendants Morrison and Reyes both stated that, "[i]n order for an inmate to be prescribed medications in the [j]ail, the inmate must be evaluated by medical staff" (Docket Entry 47 at 2; accord Docket Entry 50 at 2), they cited none of the attached jail records to support that statement (see Docket Entry 47 at 2; Docket Entry 50 at 2). In contrast – regarding the supporting briefs' assertion that, "following his booking on October 15, 2020, Plaintiff repeatedly refused to be seen by

19

medical staff for evaluation" (Docket Entry 46 at 6 (citing Docket
Entry 47 at 3-4); accord Docket Entry 49 at 6 (citing Docket Entry
50 at 3)) – Defendants Morrison and Reyes did point to jail records
to substantiate their statements that:

1) "[o]n October 17, 2020, [Defendant] Reyes attempted to
perform a History and Present Illness 'H&P' medical examination on
[Plaintiff], which he refused" (Docket Entry 47 at 3 (stray comma
omitted) (citing Docket Entry 47-1 at 51); accord Docket Entry 50
at 3 (citing Docket Entry 50-1 at 51)); and

2) "[o]n October 18, 2020, [Defendant] Reyes again attempted
to perform a History and Present Illness 'H&P' medical examination
on [Plaintiff], and he refused" (Docket Entry 47 at 4 (stray comma
omitted) (citing Docket Entry 47-1 at 50); accord Docket Entry 50
at 3 (citing Docket Entry 50-1 at 50)).

Plaintiff responded on point by (correctly) highlighting that,
despite lines for detainees to sign the jail forms cited by
Defendants Morrison and Reyes, "[his] signature is not on the
form[s]" (Docket Entry 52 at 3). (See Docket Entry 47-1 at 50-51;
Docket Entry 50-1 at 50-51.) The Reply counters that "a
plaintiff's mere allegation of falsified or reliable [sic] medical
records without justification or objective evidence does not
preclude consideration of the medical record in a ruling on summary
judgment." (Docket Entry 53 at 3 (stray comma omitted) (citing
Latimer v. Byers, Civ. No. 6:11-3259, 2012 WL 3682893 (D.S.C. July

20

20, 2012) (unpublished), <u>recommendation adopted</u>, 2012 WL 3686675 (D.S.C. Aug. 23, 2012), and <u>May v. Vanlandingham</u>, No. 5:06CT3124, 2008 WL 2278501 (E.D.N.C. June 3, 2008) (unpublished), <u>aff'd</u>, 293 F. App'x 983 (4th Cir. 2008)).) That counter-argument misses the mark because the cases invoked by Defendants Morrison and Reyes involve materially different facts.

In the first of those cases, "[t]he plaintiff [] allege[d] that [two nurses] deliberately prepared a false medical record of his October 6th examination," <u>Latimer</u>, 2012 WL 3682893, at *6, but (to support that allegation) the plaintiff "offer[ed] only that the October 6th report does not compare to the October 27th report describing his pain," <u>id.</u> More specifically, the plaintiff labeled the former report falsified because it "noted no bruising or bleeding," <u>id.,</u> despite the fact that "some residual soreness or pain was noted on the latter report," <u>id.</u> As the <u>Latimer</u> decision explained, that sequence of events "certainly d[id] not establish that the nurses submitted a fraudulent initial report." <u>Id.</u>

The second cited case involved a claim that the officer who arrested the plaintiff either intentionally or deliberately indifferently "removed [him] from the hospital before [he] received medical treatment," <u>May</u>, 2008 WL 2278501, at *5; <u>see also</u> <u>id.</u> (quoting the plaintiff's pleading as stating "that after [the officer] took [the plaintiff] to the hospital . . . he 'never saw a [d]octor or a [n]urse concerning his injuries[ before the

21

officer] just merely escorted [the] plaintiff back to [the officer's] car'"); yet, "medical records – including doctors' notes, emergency department records, and radiography films – [] conclusively establish[ed] that [the] plaintiff received extensive medical treatment," id.; see also id. ("[A]fter X-ray images showed a nondisplaced fracture of the bridge of [the] plaintiff's nose, emergency department staff closed [the] plaintiff's wounds with Dermabond, provided [him] a pain killer, and gave him a tetanus shot. The attending emergency department physician . . . examined [the] plaintiff, instructed [him] to follow up with an ear, nose, and throat specialist the following week, and gave [him] the specialist's phone number." (internal citation omitted)). The May Court resolved that claim by ruling that "[n]o rational jury could credit [the] plaintiff's naked opinion that he did not receive medical treatment in the face of overwhelming medical records documenting [his] extensive medical treatment." Id. In so doing, "the court reject[ed] as unreasonable the inference that hospital personnel fabricated the medical records." Id. (emphasizing duty to "draw[] all *reasonable* inferences in non-movant's favor" at summary judgment (emphasis in original)).

Unlike those cases, Plaintiff has not accused Defendants Morrison and Reyes (or anyone else) of fraudulently preparing or fabricating the two jail forms in question; rather, granting the Response the benefit of liberal construction accorded to pro se

filings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), Plaintiff simply gave a rational rebuttal to the position of Defendants Morrison and Reyes that those forms, on their face, would require a reasonable fact-finder to conclude that he knowingly assented to all of the information printed on the forms, including (A) that he "ha[d] been informed of the risks of refusing medical treatment for [his] current medical condition and acknowledge[d his] understand[ing of] all medical information, current diagnosis, and future procedures which ha[d] been explained to [him]" (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51), as well as (B) that he "refus[ed] any and all medical procedures and/or treatments of [his] current medical condition" (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51). If those forms included Plaintiff's signature, Defendants Morrison and Reyes would have acted within their rights to emphasize that fact in advancing their view that he knowingly declined the medical evaluation necessary to his receipt of further treatment while in custody (and therefore that he, not they, should bear responsibility for his non-receipt of seizure medication, as well as his subsequent seizure). Plaintiff has understandably asked the Court to consider the other side of the same coin, i.e., he has argued that the absence of his signature on the forms should allow (not compel) a reasonable fact-finder to discount the evidentiary force of those two forms.

Importantly, such discounting would not necessitate a determination that the forms at issue represent the product of some fraudulent scheme; instead, a reasonable fact-finder could infer that the missing signatures evince haste or inattention by jail staff in addressing whether Plaintiff needed medical care, which (in turn) could call into question whether he received adequate notice of the information on those forms. Further, Plaintiff's critique of those forms (and of the demand by Defendants Morrison and Reyes that the Court effectively give those forms dispositive effect) does <u>not</u> (A) rest on a non-sequitur-type contention of the sort raised by the plaintiff in <u>Latimer</u> (i.e., that a notation of pain on a later report established the falsity of an earlier report referencing a lack of bruising or bleeding) or (B) depend (like the plaintiff's claim in <u>May</u>) on the entirely implausible supposition that disinterested employees of a non-party hospital manufactured out of whole cloth voluminous records detailing the plaintiff's receipt of extensive medical services. To the contrary, Plaintiff has drawn the Court's attention to specific (and undisputed) aspects of two jail forms on which Defendants Morrison and Reyes rely. Plaintiff thus has not made a "mere allegation of falsified or [un]reliable medical records without justification or objective evidence" (Docket Entry 53 at 3).

The Reply nonetheless insists that "[i]t is <u>not illogical to assume</u> that[,] when refusing medical treatment, an inmate <u>may</u> also

24

refuse to sign the corresponding form, acknowledging the refusal."
(Id. at 3-4 (emphasis added).) True enough, but – to secure
summary judgment – Defendants Morrison and Reyes must come forward
with more than "not illogical [] assum[ptions]" (id. at 3) about
what "may" (id.) have occurred. See Pegg v. Klempa, 651 F. App'x
207, 211 n.3 (4th Cir. 2016) (criticizing district court's adoption
of "assumption [favoring moving party] on summary judgment [as]
inappropriately ignor[ing] the requirement that facts be viewed in
the light most favorable to [non-moving party], and that all
reasonable inferences be drawn in her favor"). In this case,
"[d]rawing reasonable inferences in [Plaintiff's] favor, [the Court
should decline to] say that no reasonable jury, looking at the
totality of the events that form this dispute, would find [for
Plaintiff on the merits of his claim] . . . ." Dulaney v.
Packaging Corp. of Am., 673 F.3d 323, 332 (4th Cir. 2012).[4]

_____

4 Indeed, even crediting the assertions by Defendants Morrison
and Reyes about Plaintiff's failure to submit to an evaluation, a
reasonable jury arguably could decide that, given the (recent)
documentation of his need for seizure medication on file at the
jail, their conduct "was . . . objectively unreasonable," Short, 87
F.4th at 611 (internal quotation marks omitted), because they
"should have known of [his seizure] condition and th[e] risk [of
seizures without medication], and acted accordingly," id., i.e., in
Plaintiff's words, Defendants Morrison and Reyes at least "should
have informed [the supervising physician assistant] of Plaintiffs
[sic] seizure history and medications" (Docket Entry 52 at 4; see
also id. at 7 (arguing that "prior knowledge of [Plaintiff's]
seizure medication from Oct[ober] 3, 2020" existed and "should have
been transferred to the P.A." (internal quotation marks omitted))).

25

Fourteenth Amendment Deliberate Indifference – Qualified Immunity

"Having determined that Plaintiff's claims against [Defendants Morrison and Reyes] should go forward [on the merits], [this Recommendation] must address [their] argument that they are entitled to qualified immunity." Scinto v. Stansberry, 841 F.3d 219, 235 (4th Cir. 2016).[5] "[Q]ualified immunity shields government officials from liability for civil damages for the deprivation of federal rights so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tarashuk v. Givens, 53 F.4th 154, 162 (4th Cir. 2022) (internal quotation marks omitted). Simply stated, Defendants Morrison and Reyes possess "entitle[ment] to qualified immunity unless [they] (1) violated a federal statutory or constitutional right, and (2) the unlawfulness of [their] conduct was clearly established at the time." Hulbert v. Pope, 70 F.4th 726, 732 (4th Cir. 2023) (internal quotation marks omitted). "If [Plaintiff] fails at either prong, [Defendants Morrison and Reyes] are entitled to summary judgment." Amisi v. Brooks, 93 F.4th 659, 666 (4th Cir. 2024).

The second prong of the qualified immunity test "requires looking to the law *at the time* of the conduct in question." Mays,

---

5 The supporting briefs filed by Defendants Morrison and Reyes both raise the issue of their "entitle[ment] to qualified immunity for Plaintiff's claims" (Docket Entry 46 at 4 (bold and all-caps font omitted); accord Docket Entry 49 at 4) and present arguments on that issue (see Docket Entry 46 at 7-8; Docket Entry 49 at 6-7).

26

992 F.3d at 301 (emphasis in original). Well before October 15, 2020, "it was clearly established that 'a pretrial detainee had a right to be free from any form of punishment under the Due Process Clause of the Fourteenth Amendment.' And that right required 'that government officials not be deliberately indifferent to any serious medical needs of the detainee.'" Id. (internal citation omitted) (quoting Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990)).

However, as of and for more than three years after October 15, 2020, the Fourth Circuit's "caselaw considered a [Fourteenth Amendment] deliberate-indifference claim to require both an objectively serious medical condition and subjective knowledge by a [government] official of both the serious medical condition and the excessive risk posed by the official's action or inaction." Id. (emphasis added) (internal quotation marks omitted); see also Short, 87 F.4th at 610-11 (abrogating, on December 8, 2023, prior precedent applying subjective element of Eighth Amendment claims for deliberate indifference to Fourteenth Amendment claims for deliberate indifference); Nelson v. Guilford Cnty., No. 1:23CV233, 2024 WL 691372, at *6 (M.D.N.C. Feb. 20, 2024) (unpublished) (Peake, M.J.) ("Until recently, a claim for deliberate indifference by a pretrial detainee also included a subjective component requiring that the official actually knew of the excessive risk to the individual's safety . . . . [T]he Fourth Circuit in Short concluded that the subjective element does not apply to Fourteenth

27

Amendment deliberate indifference claims by pretrial detainees."),
recommedation adopted, slip op. (M.D.N.C. Mar. 25, 2024) (Biggs,
J.). As a result, "if the [record] show[s] that [Defendants
Morrison and Reyes] lacked the required subjective knowledge, then
the[y ] would not have violated *clearly established* law. Only if
the [record] plausibly show[s] . . . subjective knowledge by
[Defendants Morrison and Reyes] will [Plaintiff's] claim clear the
qualified-immunity hurdle." Mays, 992 F.3d at 302 (emphasis in
original); see also Ray v. Roane, 93 F.4th 651, 658 (4th Cir. 2024)
(mandating "analy[sis of a defendant's] entitlement to qualified
immunity using the same evidentiary record that informed [the]
analysis of the constitutional merits"); Thorpe v. Clarke, 37 F.4th
926, 937-39 (4th Cir. 2022) (ruling that, for deliberate
indifference claims with both objective and subjective elements,
qualified immunity analysis focuses only on subjective element).

To recap, at the time of these events, under Fourth Circuit
precedent, a Section 1983 claim for unconstitutional deprivation of
medical care (whether brought by a pretrial detainee or a convicted
prisoner) required proof that the defendant "acted with 'deliberate
indifference' (subjective) to [the plaintiff's] 'serious medical
needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.
2008).[6] "The subjective component . . . sets a particularly high

_____

6 Regarding the objective element, as discussed previously,
(A) Defendants Morrison and Reyes have not disputed that Plaintiff
(continued...)

28

bar to recovery." Id. "It requires that a [defendant] actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (internal quotation marks omitted). "A plaintiff can meet the subjective knowledge requirement through direct evidence of a [defendant's] actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto, 841 F.3d at 226.

Concerning the subjective knowledge element, the Amended Complaint alleges that, on October 15, 2020, "[Defendants] Morrison and [] Reyes were notified of [Plaintiff's] seizure history and seizure medication Depocote [sic] that [he] ha[s] to take twice daily for [his] seizures." (Docket Entry 25 at 7.) But Plaintiff did not sign the Amended Complaint under oath or subject to perjury penalties (see id. at 15) and "the opponent of a summary judgment motion . . . cannot simply rest upon his unverified complaint," Higgins v. Scherr, 837 F.2d 155, 156-57 (4th Cir. 1988).[7] Given that (as detailed in the preceding subsection) Defendants Morrison

---

6(...continued)
suffered from a seizure condition requiring medication or that said condition qualified as a serious one, and (B) the record, as well as abundant authority, shows that he did and that it does.

7 Plaintiff likewise did not verify the Response (see Docket Entry 52 at 8) and thus his "[s]tatements in [that] brief . . . are not evidence," Hill, 2022 WL 1625020, at *3. Regardless, the Response does not include any statements asserting personal knowledge by Plaintiff about Defendant Morrison's or Defendant Reyes's state of mind in relation to Plaintiff's need for anti-seizure medication. (See Docket Entry 52 at 1-8.)

and Reyes also neglected to present properly verified statements, the Court (in evaluating the subjective knowledge element for purposes of summary judgment) can look only to the matching sets of jail and hospital records tendered by Defendants Morrison and Reyes (see Docket Entry 47-1 at 1-98; Docket Entry 50-1 at 1-98), the admissibility of which Plaintiff has not contested (see Docket Entry 52 at 1-8). See, e.g., Jones v. Western Tidewater Reg'l Jail, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016) ("[B]ecause [the d]efendants have not objected that the materials submitted cannot be presented in a form that would be admissible in evidence, and because the [c]ourt perceives no reason why such medical records could not be authenticated if [the p]laintiff was called upon to do so, the [c]ourt could consider their contends [sic] undisputed for purposes of the summary judgment motion." (internal brackets and quotation marks omitted)), reconsideration denied and judgment ordered, No. 2:15CV316, 2016 WL 3647591 (E.D. Va. June 30, 2016) (unpublished), aff'd sub nom., Jones v. Butler, 671 F. App'x 60 (4th Cir. 2016).[8] Those records reflect these pertinent facts:

_____

    8 Plaintiff's (unauthorized) sur-reply does "ask the [C]ourt in respect to not consider [ D]efendant[ Morrison's and Defendant Reyes's] submitt[ed] . . . documents, because this is 'extrinsic evidence' and a motion to [d]ismiss is supposed to consider only the adequacy of the complaint." (Docket Entry 54 at 1 (stray punctuation omitted).) The Summary Judgment Motions, of course, do not constitute motions to dismiss and the sur-reply's quoted language fails to object that the records at issue "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). Moreover, throughout the Response, Plaintiff repeatedly relied on those records. (See Docket Entry 52 at 2-7.)

1) on October 3, 2020, Stanly County Sheriff's Office personnel booked Plaintiff into the jail (see Docket Entry 47-1 at 1-2; Docket Entry 50-1 at 1-2);

2) the intake documents included a "Jail Alert[]" for "MEDICAL" (Docket Entry 47-1 at 1 (bold font omitted); Docket Entry 50-1 at 1 (bold font omitted));

3) that same day, a nurse (illegibly) signed a "Jail Medical Screen History Report" (on the line for "Reviewed By (Nurse)"), which documented that Plaintiff was "currently taking . . . [m]edication for siezures [sic]" (Docket Entry 47-1 at 13-14 (bold font omitted); Docket Entry 50-1 at 13-14 (bold font omitted));

4) on October 4, 2020, Plaintiff bonded out of custody (Docket Entry 47-1 at 2; Docket Entry 50-1 at 2);

5) on October 15, 2020, Stanly County Sheriff's Office personnel again booked Plaintiff into the jail (see Docket Entry 47-1 at 20; Docket Entry 50-1 at 20), once more with a "Jail Alert[]" for "MEDICAL" (Docket Entry 47-1 at 20 (bold font omitted); Docket Entry 50-1 at 20 (bold font omitted));

6) per the "Jail Medical Screen History Report" prepared that day (and again illegibly signed as "Reviewed By (Nurse)"), Plaintiff denied "currently taking any medications" and affirmed his "understand[ing] that [m]edical . . . services are available to [him]" (Docket Entry 47-1 at 52-53 (bold font omitted); Docket Entry 50-1 at 52-53 (bold font omitted));

31

7) Defendant Reyes's signature appears on "Refusal of Medical Treatment and Release of Responsibility" forms dated October 17 and 18, 2020, which both indicate that Plaintiff declined a "History and Physical Assessment" (with the comment "'I'm Good Man'" written on the line for his "reason for refusal" on the form dated October 17, 2020), but Plaintiff did not sign either of those forms (Docket Entry 47-1 at 50-51; Docket Entry 50-1 at 50-51; see also Docket Entry 47-1 at 3 (handwritten progress notes bearing Defendant Reyes's initials beside statements that Plaintiff refused "H&P" on October 17 and 18, 2020); Docket Entry 50-1 at 3 (same));

8) according to a handwritten progress note dated October 19, 2020, a nurse responded to a call about Plaintiff "having seizure like activity" and, upon arrival in his cell-block, observed him "limp" (Docket Entry 47-1 at 3; Docket Entry 50-1 at 3);

9) emergency medical services personnel responded to the jail, where they found Plaintiff "not conscious but [] breathing" and learned that he "had 2 seizures," after which they transported him by ambulance to the hospital and witnessed him "have another seizure" while en route (Docket Entry 47-1 at 57; Docket Entry 50-1 at 57; see also Docket Entry 47-1 at 49 (stating, on referral form dated October 19, 2020, marked as "To Be Completed by the Medical Staff at the Jail," with "Kiera, LPN" listed as "Site Medical Contact (RN/LPN)," that Plaintiff was "sent to" hospital from "Stanly County Detention Center" after "possible seizure activity"

32

with request to "evaluate & treat" (bold font omitted) (standard capitalization applied)); Docket Entry 50-1 at 49 (same));

10) "[i]n the emergency room [Plaintiff] had another witnessed seizure," resulting in "intubat[ion]," administration of anti-seizure medication, and "transfer[ to intensive care] for further management" (Docket Entry 47-1 at 41; Docket Entry 50-1 at 41; see also Docket Entry 47-1 at 41-42 (describing Plaintiff, in "History and Physical Reports" form "[e]lectronically [s]igned [b]y" doctor on October 19, 2020, as having "history of . . . seizures . . . [and] currently residing at a correctional facility," as well as "[r]eport[ing] that he was on Depakote but not taking it recently," before repeating that he "[r]eported history of being on Depakote previously though he is noncompliant with medications" (bold font omitted)); Docket Entry 50-1 at 41-42 (same));[9]

11) on the evening of October 19, 2020, jail officials altered Plaintiff's custody status to "Released To Self For Unsecured Bond" as a result of the "[u]nsecur[ing of his bonds b]y [a j]udge" (Docket Entry 47-1 at 31; Docket Entry 50-1 at 31);

12) a "Physician Progress Note" from "10/20/2020 13:31 EDT" states that, upon "extubat[ion] yesterday," Plaintiff experienced "no seizure activity" and received a "consult[ from] neurology for input for antiseizure regimen," leading to his "transfer[] out of

---

9 Jail records indicate that, on October 19, 2020, Plaintiff first went to "Stanly Regional Hosp[ital]" (Docket Entry 47-1 at 32; Docket Entry 50-1 at 32) and then moved to "Northeast Med[ical] Cent[e]r" (Docket Entry 47-1 at 32; Docket Entry 50-1 at 32).

intensive care" (Docket Entry 47-1 at 43 (bold font omitted);
Docket Entry 50-1 at 43 (bold font omitted));

13) under the heading "Discharge Instructions," the body of
Plaintiff's "Discharge Summary" lists his "Discharge" as "10/20/20
16:53:00 EDT 01 - Home/Self Care" and the document's footer refers
to a "Disch[arge] Date" of "10/20/2020" at "19:08 EDT" (Docket
Entry 47-1 at 37 (bold font omitted); Docket Entry 50-1 at 37 (bold
font omitted));[10] and

14) on November 12, 2020, Plaintiff received treatment at a
hospital after a "[w]itnessed seizure at home" and "a recurrent
seizure as the ambulance pulled into the [emergency department]
bay" (Docket Entry 47-1 at 94; Docket Entry 50-1 at 94).[11]

_____

10 That document includes the following narrative with evident
errors (as marked below) which (if ignored) would provide an
account materially differing from the course of events otherwise
shown by the previously discussed jail and hospital records:

    Called by critical care to take over care of [Plaintiff]
    today.  [Plaintiff] admitted secondary to seizure after
    not receiving meds while not [sic] in jail.  When he
    arrived home [sic] he had a seizure and was intubated for
    airway protection.  He was extubated several hours later.
    Neurology was consulted and they felt that his regimen
    was appropriate, however.  He will be discharged home on
    his normal regimen.

(Docket Entry 47-1 at 37; Docket Entry 50-1 at 37.)

11 During that visit, Plaintiff "state[d] he ha[d] been taking
his medication which is Depakote" (Docket Entry 47-1 at 94; Docket
Entry 50-1 at 94) and the treating doctor noted this history:

    I was able to review the medical record and [Plaintiff]
    was actually seen for similar episode approximately 1
    month ago.  At that time[, he] had been incarcerated and
                                              (continued...)

34

Against that evidentiary backdrop, the qualified immunity-related arguments of Defendants Morrison and Reyes (like their previously discussed merits-related arguments) focus on the jail forms showing that, on October 17 and 18, 2020, Defendant Reyes twice "attempted to evaluate Plaintiff after his booking in the [j]ail, which he refused." (Docket Entry 49 at 7 (citing Docket Entry 50 at 3, in turn citing Docket Entry 50-1 at 50-51); accord Docket Entry 46 at 7 (citing Docket Entry 47 at 3-4, in turn citing Docket Entry 47-1 at 50-51).)[12]   Plaintiff, for his part, did not

        11(...continued)
        was not receiving his medications.  [He] ultimately was
        intubated and transferred at that time.   [He] was
        evaluated by neurology and [it] does appear that Depakote
        was to be the medication he was to be managed on . . . .

(Docket Entry 47-1 at 95; Docket Entry 50-1 at 95.)

        12 Beyond citing the two, above-noted jail forms, Defendant
Morrison's supporting brief argues for qualified immunity by
repeating her merits-related contention that she "never provided
any medical treatment to Plaintiff during his incarceration from
October 15, 2020 through October 19, 2020" (Docket Entry 46 at 7),
this time purporting to bolster that contention with a citation to
the entirety of the records she filed (see id. (citing generally to
Docket Entry 47-1)).   Viewed in the light most favorable to
Plaintiff, those records do not conclusively establish that
Defendant Morrison played no part in the decision-making about
what, if any, medical care Plaintiff would receive between October
15 and 19, 2020.   (See, e.g., Docket Entry 47-1 at 3 (recording
unattributed progress note dated October 19, 2020), 49 (identifying
"Kiera, LPN" as "Site Medical Contact" on referral form dated
October 19, 2020), 52 (bearing illegible signature of reviewing
nurse on "Jail Medical Screen History Report" dated October 15,
2020 (bold and all-caps font omitted)); see also Docket Entry 47 at
1-2 (describing Defendant Morrison as jail's "Medical Service
Coordinator" and her duties as "oversight of nursing staff" and
"provi[sion of] medical care to inmates".)   Finally, in discussing
qualified immunity, the supporting briefs of Defendants Morrison
                                              (continued...)

35

explicitly address qualified immunity in the Response (see Docket Entry 52 at 1-8); however, he did point to "[his Jail] Medical Screen History Report [dated October 3, 2020], which indicates that [he] takes 'medication for seizures'" (id. at 2 (citing Docket Entry 47-1 at 13 and Docket Entry 50-1 at 13)).[13]

The record evidence highlighted by Plaintiff – when viewed in the light most favorable to him with the benefit of all reasonable inferences – would support a reasonable fact-finder's determination that "a substantial risk of serious harm was . . . expressly noted by [jail] officials in the past, [under] circumstances suggest[ing] that [Defendants Morrison and Reyes] had been exposed to information concerning th[at] risk and thus must have known about it," Parrish, 372 F.3d at 303 (internal brackets and quotation marks omitted). But "[l]iability under th[e subjective knowledge] standard [] requires two showings." Id. "First, the evidence must

_____

12(...continued)
and Reyes cite their separately filed (but not properly sworn) statements as evidence that "Plaintiff could not be prescribed and administered medications without a medical evaluation and prescription by the [supervising physician assistant]." (Docket Entry 46 at 7 (citing Docket Entry 47 at 2); accord Docket Entry 49 at 7 (citing Docket Entry 50 at 2).) For reasons outlined in the prior subsection, those statements do not qualify as evidence.

13 The Response describes that Jail Medical Screen Report as "signed by [Defendant] Reyes" (Docket Entry 52 at 2; accord id. at 4), but that description conflicts with the Amended Complaint, which expressly alleges "[t]hat [Jail M]edical [S]creen[ Report] . . . [wa]s signed by [Defendant] Morrison" (Docket Entry 25 at 7). No matter who signed that Jail Medical Screen Report, the Response maintains that "both [D]efendants Reyes and Morrison disregard[ed] and ignore[d the] answer [about] Plaintiff taking seizure medication . . . ." (Docket Entry 52 at 7.)

36

show that [Defendants Morrison and Reyes] subjectively recognized a substantial risk of harm." Id. The evidence of Plaintiff's need for anti-seizure medication "expressly noted by [jail] officials in the past, [under] circumstances suggest[ing] that [Defendants Morrison and Reyes] had been exposed to information concerning th[at need]," id. (internal quotation marks omitted)), allows the reasonable inference that they "must have known about it," id. (internal quotation marks omitted).

That inference gets Plaintiff past the first of the subjective knowledge element's two prongs, still leaving the "[s]econd, [which requires] evidence [] show[ing] that [Defendants Morrison and Reyes] subjectively recognized that [their] actions were inappropriate in light of [his prior documented need for anti-seizure medication]." Id. (internal quotation marks omitted). For that prong, "it is not enough that [Defendants Morrison and Reyes] *should have* recognized that [their] actions were inappropriate; [they] actually *must have* recognized that [their] actions were insufficient." Id. (emphasis in original). Importantly, although circumstantial proof can suffice on this prong too, e.g., if the record permitted "a factfinder [to] conclude that [an] official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that [her] response to th[at] risk was inappropriate," id., "an offic[ial]'s response to a perceived risk must be more than merely

37

negligent or simply unreasonable," id. at 306-07; see also Wynn v. Mundo, 367 F. Supp. 2d 832, 837 (M.D.N.C.) (Bullock, J.) ("Significantly, an error of judgment on the part of prison medical staff . . ., while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." (internal quotation marks omitted)), aff'd, 142 F. App'x 193 (4th Cir. 2005).

Plaintiff's proof falls short on that second prong of the subjective knowledge element. Specifically, the record evidence of the steps taken by jail medical staff between October 15 and 19, 2020, in view of the information about Plaintiff's seizure condition on file at the jail from his booking on October 3, 2020, does not reveal a "response to [the] perceived risk [associated with that condition which] was so patently inadequate as to justify an inference that [Defendants Morrison and Reyes] actually recognized that [their] response to th[at] risk was inappropriate," Parrish, 372 F.3d at 303. Rather, "the evidence shows, at most, that [their] response to [the] perceived substantial risk was unreasonable under the circumstances . . . ." Id. at 307.

As an initial matter, the record confirms that, upon entering the jail on October 15, 2020, Plaintiff underwent a 45-question medical screening (see Docket Entry 47-1 at 52-53; Docket Entry 50-1 at 52-53), during which he (A) denied "medical problems that [jail officials] need[ed] to know about" (Docket Entry 47-1 at 53;

38

Docket Entry 50-1 at 53) and (B) denied "currently taking any medications" (Docket Entry 47-1 at 53; Docket Entry 50-1 at 53). Notwithstanding those dual denials, Defendant Reyes attempted on two occasions (on October 17 and 18, 2020) to conduct a further "History and Physical Assessment" of Plaintiff. (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51.) Each time, Defendant Reyes completed a form documenting that, while "alert and oriented," Plaintiff refused her attempts (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51), the first time stating "'I'm Good Man'" (Docket Entry 47-1 at 51; Docket Entry 50-1 at 51). On both forms, Defendant Reyes denoted that Plaintiff "ha[d] the right to refuse." (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51.) Moreover, after those encounters, Defendant Reyes (or another jail staff member) forwarded the forms in question to the jail's "Medical Director[]" (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51), who initialed them in "[a]cknowledgement" (Docket Entry 47-1 at 50, 51; Docket Entry 50-1 at 50, 51).[14]

_____

14 The Response correctly comments "that [Plaintiff's] signature is not on th[ose] form[s]." (Docket Entry 52 at 3.) As discussed in detail in the preceding subsection, that fact would allow a reasonable fact-finder to decline to treat those forms as conclusive proof that Plaintiff understood all the information on the forms (and thus knowingly declined treatment). That determination helped Plaintiff avoid summary judgment on the merits of his deliberate indifference claim under Short's objective unreasonableness standard, but it cannot do the same work in the qualified immunity context, which (in this case) looks to the mental state of Defendants Morrison and Reyes. More precisely, an inference that Plaintiff failed to understand all the information on the forms (and thus failed to knowingly decline treatment) does

(continued...)

39

In the face of the foregoing, documentary evidence of the non-negligible actions taken by jail staff to address Plaintiff's medical condition, "the record before [the Court] here contains no evidence suggesting that [Defendants Morrison and Reyes] recognized that the[se] actions were inappropriate under the circumstances." Parrish, 372 F.3d at 308. The Response instead tries to pin liability on them by proffering things they should have done to protect Plaintiff. (See, e.g., Docket Entry 52 at 4 ("[Defendant] Reyes can or should have informed [the supervising physician assistant] of Plaintiffs [sic] seizure history and medications." (emphasis added)), 5 (asserting that Defendants Morrison and Reyes should have requested Plaintiff's hospital records in "October 2020," because, if they had done so, "then [his] injuries would have been preventable"), 7 ("[Defendant] Reyes had factual prior knowledge of [Plaintiff's] seizure medication from Oct[ober] 3, 2020. So this knowledge should have been transferred to the [supervising physician assistant]." (emphasis added)).) "Under [Fourth Circuit] precedent, however, the feasibility of additional precautionary measures is rarely probative in a deliberate indifference inquiry." Parrish, 372 F.3d at 309. Indeed:

_____

14(...continued)
not support stacking on top of that inference the further inference that Defendant Reyes (let alone Defendant Morrison) knew Plaintiff failed to understand all the information on the forms (and thus failed to knowingly decline treatment). "While the first inference is reasonably probable given the evidence, the stacked inference is not." Koon v. North Carolina, 50 F.4th 398, 410 (4th Cir. 2022).

40

> As [the Fourth Circuit] often ha[s] made clear, the question in deliberate indifference cases [with a subjective knowledge element] is not whether the [defendant-]officials could have taken additional precautions – almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken – but whether they *disregarded* an excessive risk to health or safety.

Id. (internal brackets, ellipsis, and quotation marks omitted) (emphasis in original).

Essentially, "all those 'shoulds' are the language of negligence, arguments about what a reasonably prudent person would have done." Koon v. North Carolina, 50 F.4th 398, 409 (4th Cir. 2022); see also id. ("Saying that [the defendant-official] should have done a better [job] is to make a kind of medical malpractice claim . . . ."). In fact, the Response explicitly frames Plaintiff's liability theory as premised on reasonableness, by arguing that "[Defendant] Reyes had prior knowledge from [the Jail Medical Screen Report dated October 3, 2020] about [Plaintiff's] seizure [h]istory and she failed to respond reasonably to it." (Docket Entry 52 at 3 (emphasis added).) That unreasonable response theory cannot survive summary judgment because, under the legal standard applicable at the time of these events (i.e., the clearly established law for purposes of the qualified immunity defense raised by Defendants Morrison and Reyes), their "response to a perceived risk must be more than . . . simply unreasonable," Parrish, 372 F.3d at 306-07. The Court therefore should enter

41

summary judgment for Defendants Morrison and Reyes based on their qualified immunity defense.

CONCLUSION

The record, viewed in the light most favorable to Plaintiff, precludes summary judgment for Defendants Morrison and Reyes on the merits of the Amended Complaint's claim for deliberate indifference in violation of the Fourteenth Amendment, considering the elements recently adopted by the Fourth Circuit for such claims; however, even viewing the record in Plaintiff's favor, the defense of qualified immunity – which incorporates the more demanding, legal standard that governed Plaintiff's claim at the time it arose – entitles Defendants Morrison and Reyes to summary judgment.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motions (Docket Entries 45, 48) be granted in part, in that the Court should enter summary judgment in favor of Defendants Morrison and Reyes on their defense of qualified immunity and should dismiss this action accordingly.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 2, 2024